IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JONATHAN H. POWERS,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00006 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | By: PAMELA MEADE SARGENT |
| **Acting Commissioner of Social Security,** | ) | United States Magistrate Judge |
| | ) | |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Jonathan H. Powers, ("Powers"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Powers protectively filed applications for DIB and SSI[2] on December 4, 2018, alleging disability as of February 27, 2018,[3] due to severe lower

---

[2] Powers previously filed applications for DIB and SSI on March 17, 2015, alleging disability as of December 29, 2014. (R. at 66.) By decision dated February 26, 2018, the ALJ denied his claims. (R. at 66-75.)

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01 at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. §§ 404.1520c, 416.920c, which prescribe how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright*. *See* Program Operations Manual System, ("POMS"), DI 24503.005, available at http://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous February 2018 decision and found it persuasive because subsequent evidence submitted did not outweigh the probative value of the prior decision, and, in fact, supported the previous findings. (R. at 25.) The ALJ noted he balanced the medical record of evidence along with Powers's subjective complaints and determined that the evidence relevant to the current period of consideration supported finding a residual functional capacity of less than a full range of sedentary work with occasional postural movements. (R. at 25.)

[3] At his hearing, Powers requested to amend his alleged onset date to May 1, 2018. (R. at 40.) Regardless, the ALJ found Powers's alleged onset date was February 27, 2018. (R. at 18.)

back pain; sciatica; leg and hip pain; depression; hyperthyroidism; and high blood pressure. (Record, ("R."), at 40, 241-49, 278.) The claims were denied initially and on reconsideration. (R. at 169-97.) Powers requested a hearing before an administrative law judge, ("ALJ"). (R. at 198-99.) A hearing was held on July 9, 2020, at which Powers was represented by counsel. (R. at 35-62.)

By decision dated March 24, 2020, the ALJ denied Powers's claims. (R. at 15-28.) The ALJ found Powers met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2019. (R. at 18.) The ALJ found Powers had not engaged in substantial gainful activity since February 27, 2018, the alleged onset date. (R. at 18.) The ALJ determined Powers had severe impairments, namely, lumbar spine degenerative disc disease; cervical spine degenerative disc disease; osteoarthritis; and obesity, but he found Powers did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 20.)

The ALJ found Powers had the residual functional capacity to perform sedentary[4] work with the use of a handheld assistive device for use on uneven terrain or prolonged ambulation more than 30 feet; he could never crawl or climb ladders, ropes or scaffolds; he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or push and pull; he could frequently handle or finger objects; and he needed to avoid concentrated exposure to cold, heat, vibration and hazards,

---

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a) (2021).

such as moving machinery and heights. (R. at 21-22.) The ALJ found Powers was able to perform his past relevant work as an answering service operator, an answering service supervisor and a telephone representative. (R. at 26.) In addition, based on Powers's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Powers could perform, including the jobs of an addressing clerk, a document preparer and a weight tester. (R. at 26-27, 57-59.) Thus, the ALJ concluded Powers was not under a disability as defined by the Act, and he was not eligible for SSI and DIB benefits. (R. at 27-28.) *See* 20 C.F.R. §§ 404.1520(f), (g), 416.920(f), (g) (2021).

After the ALJ issued his decision, Powers pursued his administrative appeals, (R. at 334-36), but the Appeals Council denied his request for review. (R. at 1-5.) Powers then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2021). This case is before this court on Powers's motion for summary judgment filed July 21, 2021, and the Commissioner's motion for summary judgment filed June 7, 2022.[5]

## II. Facts

Powers was born in 1982, (R. at 26, 41), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has one year of college education and past work experience as an answering service operator, an

---

[5] The Commissioner inadvertently filed a copy of Powers's Brief on August 19, 2021. (Docket Item No. 17.) On June 7, 2022, the Commissioner filed a brief in support of her motion for summary judgment. (Docket Item No. 18.)

answering service supervisor and a telephone representative.[6] (R. at 41, 57.) Powers testified at his hearing that he had used a cane for five years to help with his balance. (R. at 45.) He stated he could not walk without the use of an assistive device. (R. at 45.) Powers stated he was "depressed all the time," but he did not take medication for his symptoms. (R. at 55.) He stated he had problems getting along with family, friends and neighbors because pain made him "irritable and mean," but he had no problems getting along with authority figures. (R. at 293-94.) Powers stated he could not follow written or spoken instructions "very well." (R. at 293.)

In rendering his decision, the ALJ reviewed records from Joseph Leizer, Ph.D., a state agency psychologist; Dr. Bert Spetzler, M.D., a state agency physician; Stephen P. Saxby, Ph.D., a state agency psychologist; Dr. Jack Hutcheson, M.D., a state agency physician; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Mountain View Regional Medical Center, ("Mountain View"); Dr. Vijay Kumar, M.D.; Johnston Memorial Diabetes Care Center, ("Diabetes Care Center"); University of Virginia Health System, ("UVA"); Southern Medical Group, Inc.; Medical Associates Neurosurgery and Spine, ("Neurosurgery and Spine"); and Dawn M. Short, N.P., a nurse practitioner.

On October 5, 2016, Dawn M. Short, N.P., a nurse practitioner, completed a medical assessment,[7] finding Powers could lift and carry items weighing only five

---

[6] The vocational expert classified the job as an answering service operator and telephone representative as semi-skilled, sedentary work, and his job as an answering service supervisor as skilled, sedentary work. (R. at 57.)

[7] The court notes that this medical assessment was rendered outside the time period under consideration; however, since the ALJ considered it in making his decision, the court has included it in its facts.

pounds; he could stand and/or walk a total of one hour in an eight-hour workday and he could do so for 15 minutes without interruption; he could sit up to three hours in an eight-hour workday and could do so for 15 minutes without interruption; he could occasionally kneel and never climb, stoop, balance, crouch and crawl; he had a limited ability to reach, to handle and to push and pull; and was restricted from working around heights, moving machinery, temperature extremes, fumes, humidity and vibration. (R. at 468-70.) She found Powers would be absent from work more than two days a month. (R. at 470.)

On July 10, 2017, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Powers at the request of Powers's attorney.[8] (R. at 502-09.) Powers's grooming and hygiene were good; he walked slowly with a cane; he was anxious; he was able to recall three out of five words after 10 minutes; he performed Serial 7s with one error; he gave higher order and correct interpretation to two out of three commonly used adages; he was able to spell the word "world" both forwards and backwards; he had tremulousness in his hands; and he was pleasant and cooperative. (R. at 505.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered and Powers obtained a full-scale IQ score of 89. (R. at 505.) The Minnesota Multiphasic Personality Inventory – 2, ("MMPI-2), test results showed Powers experienced moderate to severe emotional distress; he had difficulty concentrating and staying on task; he was introverted and generally uncomfortable around others; and his psychopathology involved confused thinking and difficulties with logic and concentration. (R. at 507-08.) Lanthorn reported that Powers "may" develop physical symptoms in response to

---

[8] The court notes that this report and assessment were rendered outside the time period under consideration; however, since the ALJ considered it in making his decision, the court has included it in its facts.

stress. (R. at 508.) Lanthorn diagnosed major depressive disorder, recurrent, moderate with anxious distress, also moderate. (R. at 508.)

On July 31, 2017, Lanthorn completed a mental assessment, finding Powers had serious limitations in his ability to deal with work stresses and to understand, remember and carry out complex job instructions. (R. at 511-13.) Otherwise, Lanthorn found that Powers had mild to moderate[9] limitations on his ability to make occupational, performance and personal/social adjustments, but found that he would be absent from work more than two days a month. (R. at 511-13.)

On April 7, 2018, Powers presented to the emergency department at Mountain View for complaints of back pain that radiated into his lower extremities. (R. at 587-90.) He stated his back pain worsened after push mowing. (R. at 587.) Powers was alert, fully oriented and in no distress; his range of motion was normal, but he had moderate to severe tenderness at the lumbar spine and across the lower back; he had positive straight leg raising tests, bilaterally; he had 3+ knee jerks, bilaterally; and his mood, affect and behavior were normal. (R. at 588-89.)

The record shows Powers treated with Dr. Vijay Kumar, M.D., from April 2018, through May 2020 for complaints of low back pain that radiated into his left lower extremities; leg pain; and anxiety. In May 2018, Powers reported he felt jittery, had palpitations and extreme anxiety. (R. at 673.) During this time, Powers was in no acute distress; he was conversant; his back exhibited paraspinal tenderness and spasm; he had positive straight leg raising tests on the left; his left

---

[9] Moderate is defined as more than a slight limitation, but the individual would have a satisfactory ability to function in these areas. (R. at 511.)

hip had limited range of motion; and he had normal speech and language. (R. at 666, 669, 673, 770, 772, 774, 795-96.) Dr. Kumar diagnosed low back pain; anxiety state, unspecified; hyperthyroidism;[10] tachycardia; benign essential hypertension;[11] lumbago; spinal stenosis, site unspecified; unspecified osteoarthritis, unspecified site; strain of muscle, fascia and tendon of the lower back; and intervertebral disc displacement, lumbar region. (R. at 666, 669, 673, 770-71, 773, 775, 796.) Dr. Kumar routinely noted "stress management" as part of Powers's treatment plan. (R. at 669, 673, 682, 686, 773.)

On April 13, 2018, Powers presented to the emergency department at Mountain View for complaints of fatigue and weakness. (R. at 590-94.) He denied behavioral problems and confusion. (R. at 591.) Powers was alert, fully oriented and in no distress; his range of motion was normal; he had no edema or tenderness; he had normal muscle tone; and his mood, affect and behavior were normal. (R. at 592.) He was diagnosed with weakness and hypokalemia. (R. at 594.)

On February 22, 2019, Powers presented to the emergency department at Mountain View with complaints of back, leg and shoulder pain resulting from falling down some stairs in his house. (R. at 727-40.) Powers was fully oriented and in no distress; he ambulated with a cane; he exhibited tenderness; bruises were noted over the lumbar spine and left hip, but no deformities were noted; he had full

---

[10] On April 17, 2018, an ultrasound of Powers's head and neck revealed mild diffuse enlargement of the thyroid gland and was suggestive of chronic thyroid disease. (R. at 595.) On May 10, 2018, a nuclear medicine uptake and scan of Powers's thyroid showed hyperthyroidism. (R. at 523.) On November 29, 2018, Powers saw Dr. Matthew Beasey, M.D., a physician at the Diabetes Care Center, and was diagnosed hyperthyroidism and hypokalemia. (R. at 695-98.)

[11] Powers's hypertension improved with medication. (R. at 673.)

range of motion of the left shoulder with slight tenderness noted at the musculature; and he had decreased range of motion of the lumbar spine due to pain. (R. at 732.) X-rays of Powers's lumbar spine showed multilevel degenerative changes and no acute osseous abnormality. (R. at 733, 735.)  X-rays of Powers's left hip showed no acute abnormalities. (R. at 733, 736.)

On March 14, 2019, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Powers had no limitations on his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; or to adapt or manage himself. (R. at 98-99.) Leizer noted Powers complained of depression and had been diagnosed with anxiety and depression, but his conditions were nonsevere. (R. at 98-99.)

On March 15, 2019, Dr. Bert Spetzler, M.D., a state agency physician, completed a medical assessment, finding Powers could occasionally lift and carry items weighing 10 pounds and less than 10 pounds frequently; stand and/or walk a total of four hours in an eight-hour workday; sit more than six hours in an eight-hour workday; push and pull as much as the lift/carry restrictions; frequently balance, kneel and crouch; occasionally climb ramps and stairs, stoop and crawl; and never climb ladders, ropes or scaffolds. (R. at 101-02.) Dr. Spetzler indicated no manipulative, visual, communicative or environmental limitations. (R. at 102.) On August 15, 2019, Dr. Jack Hutcheson, M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. Spetzler, except he found Powers could occasionally climb, stoop, kneel, crouch and crawl. (R. at 138-

39.) Dr. Hutcheson found the evidence did not suggest Powers would require a cane to ambulate. (R. at 139.)

On July 20, 2019, Dr. Eddie Brown, D.O., a physician with Southern Medical Group, Inc., examined Powers at the request of Disability Determination Services. (R. at 723-26.) Powers reported back pain that radiated down into both of his legs and was worsened with walking, sitting and lying down. (R. at 723.) He was independent with his activities of daily living. (R. at 723.) Powers was in no acute distress; he had an antalgic gait with the use of a cane; his grip strength was 5/5 with adequate fine motor movements, dexterity and ability to grasp objects, bilaterally; his extremities had no edema, cyanosis or erythema; he was able to sit in no significant distress and walk and stand in the office; he was fully oriented and cooperative; he did not appear to be depressed or anxious; he was able to communicate with no deficits; his recent and remote memory were intact; he had good insight and cognitive function; he had good bilateral motor tone and strength in all muscle groups; his reflexes were normal; he had intact sensation; he had no muscle asymmetry, atrophy or involuntary movements; his straight leg raising tests were positive; and he showed some signs of joint tenderness in the lumbar spine but no signs of joint instability, inflammation or deformity. (R. at 724-25.) Dr. Brown diagnosed lumbar radiculopathy. (R. at 725.)

Dr. Brown opined Powers would "unlikely" be able to walk and/or stand for a full workday; he "may be" able to sit for a partial workday with allotted occasional breaks; he would be limited to lifting and carrying items weighing less than 10 pounds because his condition "may be" exacerbated by lifting or carrying

excessive weight; and he should refrain from excessive bending, stooping and crouching. (R. at 725.)

On August 2, 2019, Powers was scheduled to undergo a mental status evaluation with Leigh Ann Ford, Ph.D., but he "did not show." (R. at 764.)

On August 5, 2019, Powers presented to the emergency department at Mountain View for a head injury and right shoulder pain after he fell. (R. at 741-63.) Powers reported he was carrying groceries, his right foot slipped, and he fell backwards hitting the back of his head on a rock. (R. at 746.) Powers was fully oriented and in no distress; his cervical spine showed mildly decreased range of motion and mild midline tenderness, but no swelling; his lumbar spine showed mild paraspinal muscle tenderness; his right shoulder showed mildly decreased range of motion, but no swelling, effusion, impingement signs or weakness; he used a cane to ambulate; his upper and lower extremities exhibited normal sensation and muscle bulk and tone; his straight leg raising tests were normal; and his mood, affect and behavior were normal. (R. at 748-49.) A CT scan of Powers's cervical spine showed mild degenerative changes. (R. at 753.) A CT scan of Powers's head showed acute sinusitis involving the right maxillary, ethmoid and sphenoid sinuses. (R. at 753-54.) X-rays of Powers's thoracic and lumbar spine showed degenerative changes. (R. at 754-55.) X-rays of Powers's right shoulder showed no osseous, articular or soft tissue abnormality. (R. at 755.) Powers was diagnosed with a concussion without loss of consciousness; contusion of the back, unspecified laterally; contusion of multiple sites of the right shoulder; degenerative disc disease, cervical; degenerative disc disease, lumbar; head injury; and strain of

neck muscle. (R. at 750.) He was advised not to drive until he was cleared by his primary care physician.[12] (R. at 758.)

On August 14, 2019, Stephen P. Saxby, Ph.D., a state agency psychologist, completed a PRTF, finding Powers had no limitations on his ability to understand, remember or apply information and to interact with others and mild limitations on his ability to concentrate, persist or maintain pace; or to adapt or manage himself. (R. at 135-36.) Saxby noted Powers had been diagnosed with anxiety and depression, but he was not in treatment. (R. at 136.) Saxby stated Powers's examinations showed he was cooperative, he did not appear depressed or anxious, he had normal memory and he had good insight and cognitive function; therefore, he found Powers's condition was nonsevere. (R. at 136.)

On March 12, 2020, Isaac O'Dell, a physician's assistant with Neurosurgery and Spine, evaluated Powers for his complaints of back pain that radiated into his legs; leg pain; neck pain that radiated into his shoulders; headaches; and bilateral extremity weakness. (R. at 785.) Powers also reported agitation and sleep disturbance, and O'Dell noted that Powers was nervous/anxious. (R. at 786.) Powers was fully oriented; his mood, affect, speech and behavior were normal; his gait was nonantalgic and nonspastic and he did not use an assistive device; he had normal range of motion of all extremities; his lumbar spine had good range of motion with no tenderness to palpation or sacroiliac joint tenderness; he had normal muscle bulk and tone; he had intact sensation; his upper and lower

---

[12] On August 7, 2019, Powers saw Dr. Kumar as a follow up to his recent emergency department visit and reported he had been nauseated and had a "funny dizzy feeling." (R. at 772.) Dr. Kumar diagnosed concussion with loss of consciousness of unspecified duration; strain of muscle, fascia and tendon of the lower back; hypertension; and anxiety disorder, unspecified. (R. at 773.)

extremities reflexes were hyperreflexic; and he had full motor strength. (R. at 788.) O'Dell diagnosed low back pain radiating to both legs; generalized hyperreflexia; and cervical spondylosis. (R. at 789.) O'Dell ordered MRIs of Powers's lumbar and cervical spines. (R. at 789.)

On April 7, 2020, an MRI of Powers's cervical spine showed moderate left foraminal narrowing at the C5-C6 level and thyromegaly as seen on the previous cervical spine CT scan. (R. at 777.) An MRI of Powers's lumbar spine showed inflammatory type arthritic abnormalities at the L3-L4 level, a dramatic change since 2013, yet no compressive sequela was noted. (R. at 778.)

On April 17, 2020, Powers saw Sara M. Pifer, P.A., a physician's assistant with Neurosurgery and Spine, and reported neck pain that radiated into his right shoulder and arm; numbness of the right arm; right hand weakness and grip issues; and back pain. (R. at 790.) Powers denied gait instability. (R. at 790.) Powers also reported agitation, confusion and sleep disturbance, and Pifer noted that Powers was nervous/anxious. (R. at 791.) Powers was fully oriented; his gait was nonantalgic and nonspastic, and he did not use an assistive device; his lumbar spine had tenderness to palpation throughout, but he had good range of motion; he had intact sensation; his reflexes were hyperreflexic in the upper and lower extremities; his straight leg raising tests were negative; and he had full motor strength. (R. at 793.) Pifer reported that Powers's MRI results revealed no surgical lesion in the lumbar spine, and Powers did not want to return to pain management. (R. at 794.)

On May 26, 2020, Dr. Kumar completed a mental assessment, finding Powers had no limitation on his ability to maintain personal appearance; he was slightly limited in his ability to follow work rules; to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to function independently; to maintain attention and concentration; to understand, remember and carry out simple and detailed job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability; and he was seriously limited in his ability to deal with work stresses and to understand, remember and carry out complex job instructions. (R. at 779-81.) He found Powers would be absent from work more than two days a month. (R. at 781.)

That same day, Dr. Kumar completed a medical assessment, finding Powers could occasionally lift and carry items weighing 15 pounds and 10 pounds frequently; he could stand and/or walk and sit a total of three hours each in an eight-hour workday and he could do so for 15 minutes without interruption; he could occasionally climb stoop, kneel, balance, crouch and crawl; his ability to push and pull was limited; and he would be restricted from working around vibration or heavy machinery. (R. at 782-84.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or

equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Powers argues the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) Powers argues the ALJ erred by rejecting the opinions of Dr. Kumar, Short and Lanthorn. (Plaintiff's Brief at 6.)

Powers filed his applications in December 2018; thus, 20 C.F.R. §§ 404.1520c, 416.920c, governs how the ALJ considered the medical opinions here.[13] When making a residual functional capacity assessment, the ALJ must

---

[13] 20 C.F.R. §§ 404.920c, 416.920c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01,

assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (2021). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (2021). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and

---

2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

other factors such as an understanding of the disability program's policies and evidentiary requirements.[14] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2021). The ALJ found Powers had the residual functional capacity to perform sedentary work with the use of a handheld assistive device for use on uneven terrain or prolonged ambulation more than 30 feet; he could never crawl or climb ladders, ropes or scaffolds; he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or push/pull; he could frequently handle or finger objects; and he needed to avoid concentrated exposure to cold, heat, vibration and hazards, such as moving machinery and heights. (R. at 21-22.)

Powers argues the ALJ erred by improperly determining his residual functional capacity by rejecting the opinions of Dr. Kumar, Short and Lanthorn. (Plaintiff's Brief at 5-6.) Based on my review of the record, I agree. As noted above, the new regulations require ALJs to explicitly discuss the supportability and consistency of medical opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("… we will explain how we considered the supportability and consistency factors for a medical source's medical opinions"). Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must – at a minimum – explain his consideration of the supportability and consistency factors.

---

[14] An exception to this is when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2021).

*See Garrett v. Kijakazi*, 2022 WL 1651454, at *2 (W.D. N.C. May 23, 2022); *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883-84 (D. Vt. 2021) (explaining that failure to "explicitly discuss the supportability and consistency of medical opinions" can result in remand). Although the ALJ referenced the assessments of these medical care providers in the context of his decision, he did not specifically make a finding as to the supportability of their findings and opinions. (R. at 19, 24.)

In making his residual functional capacity finding, the ALJ found the opinions of Lanthorn and Dr. Kumar, who both found Powers was seriously limited in his ability to deal with work stresses, to understand, remember and carry out complex job instructions, and would be absent from work more than two days a month, unpersuasive. (R. at 19.) The ALJ found these opinions were not consistent with nor supported by Powers's limited routine outpatient treatment and his benign examinations, which noted that he was cooperative, he was not depressed or anxious, his memory was intact, and he had good insight and cognitive function. (R. at 19.) The ALJ specifically pointed to Dr. Brown's July 2019 examination findings when determining the consistency and supportability factors. (R. at 19.) However, the ALJ's evaluation of Lanthorn and Dr. Kumar's opinions is devoid of any explanation whether he considerate the supportability factor in evaluating the persuasiveness of their opinions. To properly assess supportability, the ALJ must consider whether a medical source considered relevant "objective medical evidence and [presented] supporting explanations." *Todd A. v. Kijakazi*, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021) (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

The same is true for the ALJ's consideration of the physical assessments of Dr. Brown, Short and Dr. Kumar when finding these opinions unpersuasive. (R. at 24.) The ALJ referenced an August 2019 emergency department report when he stated, that "these opinions are not consistent with the most recent evidence that shows that [Powers's] cervical spine, lumbar spine, and right shoulder had decreased ranges of motion and tenderness, but he had no effusions, he had no weakness, his coordination was normal, his sensory and motor were normal, and he had negative straight leg raising test, but he ambulated with a single point cane." (R. at 24.) The ALJ also referenced Pifer's April 2020 physical examination findings that showed Powers had "normal ranges of motion, normal sensory, he had no lumbar tenderness, and he had 5/5 strength." (R. at 24.) These findings depict Pifer's finding, however, she found Powers had tenderness to palpation throughout the paraspinous musculature of the lumbar spine. While the ALJ focused on the consistency factor in considering these opinions, he failed to consider the supportability factor by failing to discuss these treatment providers' explanations offered in support of their opinions.

Concerning Short's opinion, the ALJ stated "the opinion of Ms. Short was offered 2 years before the period under consideration and does not reflect [Powers's] current level of functioning," and it was not consistent with the evidence of record. (R. at 24.) The court finds that the ALJ performed a proper supportability analysis of Short's opinion, in essence, by finding it did not reflect Powers's current level of functioning. However, the ALJ also found the opinions of Dr. Brown and Dr. Kumar unpersuasive because they were not consistent with the evidence of record. (R. at 24.) Here, the ALJ's evaluation of Dr. Brown and Dr. Kumar's opinions is devoid of any explanation whether he considered the

supportability factor in evaluating the persuasiveness of their opinions. As noted above, the ALJ is required to explain how he considered the supportability factor for a medical source's medical opinions in his decision and his failure to articulate such constitutes error. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). Absent any explanation by the ALJ whether Dr. Brown and Dr. Kumar's opinions were supported, this court cannot meaningfully review how the ALJ evaluated the persuasiveness of their opinions and whether substantial evidence supports the ALJ's determination.

Based on this, I cannot find substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding. An appropriate Order and Judgment will be entered.

DATED: September 19, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE